PEDRO MUÑOZ ROSADO, peticionario, *v.* SIXTO M. SALDAÑA, JEFE DEL PRESIDIO INSULAR, demandado.

Núm. 412.—*Sometido:* Marzo 6, 1942. *Resuelto:* Marzo 9, 1942.

*Santos P. Amadeo, Ernesto J. Fonfrías, Ángel D. Marchand Paz* y *F. Hernández Vargas,* abogados del peticionario; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *L. Negrón Fernández, Fiscal Auxiliar,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El peticionario fué sentenciado por la Corte de Distrito de Guayama a la pena de doce años de presidio por un delito de asesinato en segundo grado. La sentencia fué dictada el 4 de septiembre de 1935; y en febrero 29 de 1940, el peticionario fué excarcelado por virtud de un auto de hábeas corpus expedido por la Corte de Distrito de San Juan, por el fundamento de no haber tenido el acusado la asistencia de un abogado. El 25 de marzo del mismo año, el peticionario fué arrestado de nuevo e ingresó en la sumaria de la Cárcel de Distrito de Guayama, para responder de una acusación por homicidio voluntario, basada en los mismos hechos de la primera acusación. El 23 de abril de 1940, el peticionario se declaró culpable de homicidio voluntario, fué sentenciado a ocho años de presidio e ingresó en la Penitenciaría Insular, donde se encuentra ahora recluído.

En diciembre 29 de 1941, la Corte de Distrito de San Juan declaró con lugar una solicitud de hábeas corpus radicada por el peticionario y ordenó su inmediata excarcelación. El fundamento de dicha solicitud fué que habiendo el peticionario observado buena conducta durante todo el tiempo ,de su reclusión, lo que le daba derecho a las deducciones o rebajas provistas por la ley de marzo 14 de 1907 (Comp. 6362–6364), y habiendo estado recluído durante un período total de 5 años, 11 meses y 12 días, la pena de 8 años de presidio que le fué impuesta quedó extinguida el 27 de julio de 1941, fecha en que el peticionario debió ser excarcelado.

En la solicitud radicada ante esta Corte Suprema, el peticionario alega que no obstante la orden de excarcelación dictada por la Corte de Distrito de San Juan, el Jefe de la Penitenciaría Insular continúa deteniéndole ilegalmente y privándole de su libertad, alegando como pretexto que dicha orden no es final y que él está obligado a cumplirla solamente en el caso de que la Corte Suprema la confirme después de oír el recurso de apelación interpuesto por El Pueblo de Puerto Rico.

██ Asumiendo, sin resolverlo, que el fiscal tenga derecho a apelar de una orden decretando la libertad de un preso por haber éste cumplido la sentencia que le fué impuesta, la cuestión a resolver, que no es nueva en esta jurisdicción, es la de si la interposición por el fiscal de un recurso de apelación contra una orden excarcelando libremente a un preso que ha cumplido su sentencia suspende la ejecución de la orden recurrida.

Las apelaciones en procedimientos de hábeas corpus se rigen por la Ley disponiendo el Auto de Hábeas Corpus, aprobada en marzo 12 de 1903 (Comp. 6547–6556). La sección 1 de dicha ley concede a "cualquiera de las partes que resultare agraviada" el derecho a apelar para ante esta Corte Suprema contra la providencia definitiva que se dicte en el procedimiento. La sección 2 provee que el fiscal podrá apelar a nombre de El Pueblo de Puerto Rico "contra

una orden definitiva excarcelando libremente a un preso o detenido bajo acusación criminal'', y dispone además que el recurso interpuesto contra una orden mandando poner en libertad a un preso bajo fianza 'o reduciendo ésta, no producirá el efecto suspensivo.

En *López* v. *Corte,* 40 D.P.R. 499, se resolvió que el auto de hábeas corpus ''es esencial e históricamente un procedimiento para obtener la libertad de la persona que está bajo custodia'' y que las apelaciones en procedimientos de hábeas corpus se rigen por la ley de marzo 12, 1903. E interpretando el significado y alcance de dicha ley, el Tribunal se expresó así:

''Sin embargo, nada hallamos en todo el cuerpo de la ley que demuestre intención alguna de suspender la ejecución de una sentencia cuando se pone en libertad a una persona encarcelada o cuando se obtiene la custodia de un niño. La sección 2 solamente pone énfasis en ciertos casos.

''Convenimos igualmente con el peticionario en que cuando se decreta la 'libertad' o cambio de custodia, la justicia exige que la sentencia de la corte, que se presume correcta, sea puesta en ejecución.''

De acuerdo con lo dispuesto en el artículo 491 del Código de Enjuiciamiento Criminal, una persona que ha sido excarcelada mediante un auto de hábeas corpus no podrá ser detenida nuevamente por la misma causa, excepto cuando se le arresta en virtud de mandamiento u orden legal o cuando la excarcelación se basó en falta de pruebas o en defectos del mandamiento u orden de arresto, y se le arresta de nuevo con pruebas suficientes y se le reduce a prisión en virtud de mandamiento legal por el mismo delito.

En el caso de *Sabatino* v. *Jennings,* 246 N. Y. 258, 63 A.L.R. 1458, el jefe del penal, como en el caso de autos, se negó a poner en libertad al prisionero, basándose en que la orden de excarcelación había quedado en suspenso por la interposición de un recurso de apelación, de acuerdo con la sección 570 del ''Civil Practice Act.'' La Corte de Apela-

ciones de New York, por voz de su Juez Presidente, Sr. Cardozo, decretó la inmediata excarcelación del prisionero, diciendo:

"Esa sección no es aplicable a una apelación por un funcionario del estado contra una orden decretando la libertad incondicional de un preso mediante auto de hábeas corpus. La sección pertinente es la número 1269, la cual dispone que 'un preso que ha sido liberado por una orden final dictada en un procedimiento de hábeas corpus o *certiorari*. . . no será nuevamente encarcelado, detenido o puesto bajo custodia, por la misma causa'.

"Sería intolerable que un guardián que ha faltado a su deber, colocado por la sentencia de la corte en la posición de un transgresor, pudiese, mediante un simple escrito de apelación, prolongar automáticamente el término de reclusión, y frustrar el funcionamiento del histórico auto de libertad. 'El gran propósito del auto de hábeas corpus es la inmediata liberación de aquel que ha sido privado de su libertad personal'. Shaw, Ch. J., en *Wyeth* v. *Richardson,* 10 Gray. 240.

"           .    .      .     .    .    .    .    .      .  .

"Un estatuto que suspendiese el efecto del decreto de libertad, por la mera fuerza de una apelación, estaría en conflicto con el mandato de la Constitución, mediante el cual el auto de hábeas corpus es mantenido en todo su vigor tradicional. Const. Art. 1, párrafo 4. 'El auto no puede ser abrogado, ni su eficacia restringida, por acción legislativa' (citas). Poco quedaría de 'éste, el más grande de los autos', si se le permitiese a un carcelero retener el cuerpo de su prisionero durante todo el largo proceso de una apelación interpuesta sin permiso y lánguidamente proseguida.

"     .    .     .     .     .     .    .     .    .  .

"Resolvemos que la notificación de apelación para ante esta Corte no tiene efecto suspensivo; que el decreto de libertad conserva su fuerza obligatoria; que no se requiere ni es permitida la fianza; y que es el deber del jefe del penal poner inmediatamente en libertad al preso hasta que la apelación sea resuelta."

Si la corte de distrito procedió o no de acuerdo con la ley al decretar que el peticionario fuese puesto en libertad, es cuestión que resolveremos cuando se perfeccione y oiga el recurso de apelación interpuesto por El Pueblo de Puerto Rico. Lo único que resolvemos ahora es que la detención

del peticionario después de haberse expedido el auto decretando su libertad es una detención ilegal y que *procede por lo tanto declarar con lugar la petición y expedir el auto solicitado decretando que el peticionario Pedro Muñoz Rosado sea puesto en libertad inmediatamente.*